*In re* BUNDE'S ESTATE.

BUNDE *v.* BUNDE'S ESTATE.

EXECUTORS AND ADMINISTRATORS—CLAIM FOR SERVICES—MEMBER OF FAMILY—GRATUITOUS SERVICES—PRESUMPTIONS.

Where a deaf mute lived with his brother for many years as a member of the family, was clothed, ate at the family table, was supplied with spending money, his washing done, medicine furnished, and doctor's bills paid, it must be presumed, in the absence of evidence to the contrary, that any services he performed were gratuitous.

Error to Lapeer; Williams (William B.), J. Submitted April 12, 1921. (Docket No. 80.) Decided June 6, 1921.

William Bunde, guardian of August Bunde, presented a claim against the estate of Fred Bunde, deceased, for services rendered. The claim was allowed by the commissioners, and defendant appealed to the

circuit. court.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*Elmer Shumar,* for appellant.

*Herbert W. Smith,* for appellee.

CLARK, J.    Plaintiff presented a claim against defendant estate in the probate court for work and labor of August Bunde from January 1, 1870, to October 1, 1917, 573 months, at $5 per month, with board and clothes, $2,865.    From the allowance there the estate appealed.    In the circuit court plaintiff had verdict and judgment for $650.    The refusal to direct a verdict in favor of the estate upon motion made at the close of plaintiff's case and renewed at the conclusion of all the proofs is said to be error, it being claimed that during the period covered by the claim August Bunde was a member of the family of decedent, Fred Bunde, and that there was no evidence that the services were rendered with expectation on the part of either that they were to be paid for, and that they were presumptively gratuitous.

In 1869 Fred Bunde came from Germany to Macomb county and two weeks later was followed by his brothers, William, August and Michael.    Fred was then married.    The other brothers were not married.  August was a deaf mute and among the brothers it was then understood that he should make his home with Fred who then and for several succeeding years was a common laborer, later a tenant farmer for many years and during the last years of his life a farm owner.    August lived with Fred at his home and was a member of his family from about January 1, 1870, to the time of Fred's death in October, 1917.    Besides the husband and brother the family consisted of the wife, a son and three daughters.    For several years following 1869 Fred and August were in the

employ of others. Since Fred engaged in farming August worked with him on the farm.

Testimony for plaintiff was directed to the character and value of August's labor upon the farm. He did ordinary farm labor and chores. During the last years Fred owned but 20 acres. The son also assisted at times. When Fred died August was about 75 years of age. And to support the claim that the services were rendered with expectation and intention on the part of both Fred and August that they were to be paid for, plaintiff had the testimony of the brothers William and Michael of statements claimed to have been made by Fred in 1869 or 1870, in so far as any time is fixed:

"*A.* Yes, sir; I told him (Fred) where August was. He said, 'I want August.' August came down where he was, and he took him to his home in Capac.

"*Q.* Did you have any talk with Fred in which Fred told you what arrangement he would make or did make with August to have August work for him?

"*A.* Yes. * * *

"*Q.* What did Fred say?

"*A.* He said he would take August.

"*Q.* What did you say to him?

"*A.* He said he would work a year for—

"*Q.* Do what with his wages?

"*A.* He said he would take August and work his year out.

"*Q.* Yes?

"*A.* 'You save his wages,' and he said 'yes.'

"*Q.* You will take care of his wages?

"*A.* Yes, sir; that is what he talked.

"*Q.* What arrangement did Fred tell you he had with August?

"*A.* He said he was going to keep Gus and work for him. 'What are you going to do about collecting his wages?' He said, 'I am going to save all I can for him. He will be well taken care of.' Gus was at Fred's only a short time. He got Gus work from a man by name of Mucker. Gus was to have twelve dollars a month and his tobacco.

"*Q*. Did you ever have any talk with Fred about August's work?

"*A*. Yes, sir.

"*Q*. What did Fred say?

"*A*. Well, I spoke to him one time, 'what are you going to do about August's pay? There will be something he will have to have, to have something out of this,' and he says, 'I will take care of that.'"

And while Fred and August were in the employ of others it is said that Fred replied affirmatively to the question "Are you saving anything for August" and of this time there was other testimony of statements by Fred that he would save August's wages and testimony that he collected August's wages. As we read the record all this testimony relates to wages earned by August not in the employ of Fred but of others. No complaint is made of a ruling of the trial court that under the claim filed there could be no recovery for wages of August which Fred had collected from others. There is no evidence that August ever asked for wages of Fred before Fred's death and we think no evidence that the subject of wages was mentioned during nearly 40 years preceding the death. It is undisputed that August was clothed, ate at the family table, had from Fred spending money, "always had money," "had two pouches where he carried it," his washing was done, his medicines were furnished and his doctor's bills were paid, and because of his certain personal peculiarities, congenital and acquired, Mrs. Bunde was afraid of him and she said: "we had lots of trouble with August."

From this testimony it may not be implied that there was an agreement that August should be paid for his services while living in Fred's family and working on his farm, nor that such services were given and received with the expectation by both that they were to be paid for. It must be presumed that the ser-

vices were gratuitously performed.   See 18 Cyc. p. 412; *In re De Haan's Estate,* 169 Mich. 146.

A verdict for defendant should have been directed. The judgment is reversed, with costs, and a new trial granted.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE,. BIRD, and SHARPE, JJ., concurred.